Lincoln D. Bandlow, Esq. (CA #170449)
Lincoln@BandlowLaw.com
**Law Offices of Lincoln Bandlow, PC**
1801 Century Park East, Suite 2400
Los Angeles, CA 90067
Phone: (310) 556-9680
Fax: (310) 861-5550

Attorney for Plaintiff
Strike 3 Holdings, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STRIKE 3 HOLDINGS, LLC,<br><br>        Plaintiff,<br><br>vs.<br><br>JOHN DOE subscriber assigned IP address 76.93.228.114,<br><br>        Defendant. | Case Number:<br><br>**COMPLAINT FOR COPYRIGHT INFRINGEMENT - DEMAND FOR JURY TRIAL** |

Plaintiff, Strike 3 Holdings, LLC ("Strike 3" or "Plaintiff"), brings this complaint against Defendant, John Doe subscriber assigned IP address 76.93.228.114 ("Defendant"), and alleges as follows:

### Introduction

1. This is a case about the ongoing and wholesale copyright infringement of Plaintiff's motion pictures by Defendant, currently known only by an IP address.

2. Plaintiff is the owner of award-winning, critically acclaimed adult motion pictures.

3. Strike 3's motion pictures are distributed through the *Blacked*, *Tushy*, *Vixen*, *Tushy Raw*, *Blacked Raw*, *MILFY*, and *Slayed* adult websites and DVDs.

1

1  With millions of unique visitors to its websites each month, the brands are famous
2  for redefining adult content, creating high-end, artistic, and performer-inspiring
3  motion pictures produced with a Hollywood style budget and quality.
4      4.    Defendant is, in a word, stealing these works on a grand scale.  Using
5  the BitTorrent protocol, Defendant is committing rampant and wholesale
6  copyright infringement by downloading Strike 3's motion pictures as well as
7  distributing them to others.  Defendant did not infringe just one or two of Strike
8  3's motion pictures, but has been recorded infringing 37 movies over an extended
9  period of time.
10     5.    Although Defendant attempted to hide this theft by infringing
11 Plaintiff's content anonymously, Defendant's Internet Service Provider ("ISP"),
12 Spectrum, can identify Defendant through his or her IP address 76.93.228.114.
13     6.    This is a civil action seeking damages under the United States
14 Copyright Act of 1976, *as amended*, 17 U.S.C. §§ 101 et seq. (the "Copyright
15 Act").

**Jurisdiction and Venue**

17     7.    This Court has subject matter jurisdiction over this action pursuant to
18 28 U.S.C. § 1331 (federal question); and 28 U.S.C. § 1338 (jurisdiction over
19 copyright actions).
20     8.    This Court has personal jurisdiction over Defendant because
21 Defendant used an Internet Protocol address ("IP address") traced to a physical
22 address located within this District to commit copyright infringement.  Therefore:
23 (i) Defendant committed the tortious conduct alleged in this Complaint in this
24 State; (ii) Defendant resides in this State and/or; (iii) Defendant has engaged in
25 substantial – and not isolated – business activity in this State.
26     9.    Plaintiff used IP address geolocation technology by Maxmind Inc.
27 ("Maxmind"), an industry-leading provider of IP address intelligence and online
28 fraud detection tools, to determine that Defendant's IP address traced to a physical

address in this District. Over 5,000 companies, along with United States federal and state law enforcement, use Maxmind's GeoIP data to locate Internet visitors, perform analytics, enforce digital rights, and efficiently route Internet traffic.

10. Pursuant to 28 U.S.C. § 1391(b) and (c), venue is proper in this district because: (i) a substantial part of the events or omissions giving rise to the claims occurred in this District; and, (ii) the Defendant resides (and therefore can be found) in this District and resides in this State. Additionally, venue is proper in this District pursuant 28 U.S.C. § 1400(a) (venue for copyright cases) because Defendant or Defendant's agent resides or may be found in this District.

## Parties

11. Plaintiff, Strike 3 is a Delaware limited liability company located at 2140 S. Dupont Hwy, Camden, DE.

12. Plaintiff currently can only identify Defendant by his or her IP address. Defendant's IP address is 76.93.228.114. Defendant's name and address can be provided by Defendant's Internet Service Provider.

## Factual Background

### *Plaintiff's Award-Winning Copyrights*

13. Strike 3's subscription-based websites proudly boast a paid subscriber base that is one of the highest of any adult-content sites in the world. Strike 3 also licenses its motion pictures to popular broadcasters and Strike 3's motion pictures are some of the highest selling adult DVDs in the United States.

14. Strike 3's motion pictures and websites have won numerous awards, such as "best cinematography," "best new studio," and "adult site of the year."

15. Strike 3's motion pictures have had positive global impact, leading more adult studios to invest in better content, higher pay for performers, and to treat each performer with respect and like an artist.

16. Unfortunately, Strike 3, like a large number of other makers of motion picture and television works, has a major problem with Internet piracy.

Complaint – Demand for Jury Trial

1  Often appearing among the most infringed popular entertainment content on
2  torrent websites, Strike 3's motion pictures are among the most pirated content in
3  the world.

### Defendant Used the BitTorrent File Distribution Network
### to Infringe Plaintiff's Copyrights

6      17.    BitTorrent is a system designed to quickly distribute large files over
7  the Internet. Instead of downloading a file, such as a movie, from a single source,
8  BitTorrent users are able to connect to the computers of other BitTorrent users in
9  order to simultaneously download and upload pieces of the file from and to other
10 users.

11     18.    BitTorrent's popularity stems from the ability of users to directly
12 interact with each other to distribute a large file without creating a heavy load on
13 any individual source computer and/or network.  It enables Plaintiff's motion
14 pictures, which are often filmed in state of the art 4kHD, to be transferred quickly
15 and efficiently.

16     19.     To share a movie within the BitTorrent network, a user first uses
17 BitTorrent software to create a .torrent file from the original digital media file.
18 This process breaks the original digital media file down into numerous pieces.

19     20.    The entire movie file being shared has a hash value (*i.e.*, the "File
20 Hash").  A hash value is an alpha-numeric value of a fixed length that uniquely
21 identifies data.

22     21.    Hash values are not arbitrarily assigned to data merely for
23 identification purposes, but rather are the product of a cryptographic algorithm
24 applied to the data itself.  As such, while two identical sets of data will produce
25 the same cryptographic hash value, any change to the underlying data – no matter
26 how small – will change the cryptographic hash value that correlates to it.

27     22.    To find and re-assemble the pieces of the digital media file, *i.e.*, to
28 download the file using BitTorrent, a user must obtain the .torrent file for the

specific file that has been broken down into pieces.

23. Each .torrent file contains important metadata with respect to the pieces of the file. When this data is put into the cryptographic algorithm, it results in a hash value called the "Info Hash."

24. The "Info Hash" is the data that the BitTorrent protocol uses to identify and locate the other pieces of the desired file (in this case, the desired file is the respective file for the infringing motion pictures that are the subject of this action) across the BitTorrent network.

25. Using the Info Hash in the metadata of a .torrent file, a user may collect all the pieces of the digital media file that correlates with the specific .torrent file.

26. Once a user downloads all of the pieces of that digital media file from other BitTorrent users, the digital media file is automatically reassembled into its original form, ready for playing.

27. Plaintiff has developed, owns, and operates infringement detection systems named "VXN Scan" and the "Cross Reference Tool". Each infringement detection system identifies infringement in two distinct ways.

28. The Cross Reference Tool first searched for and obtained .torrent files claiming to be infringing copies of Plaintiff's works, and then VXN Scan downloaded complete copies of the digital media files that correlate to those .torrent files.

29. Plaintiff then compared the completed digital media files to Plaintiff's copyrighted works to determine whether they are infringing copies of one of Plaintiff's copyrighted works.

30. The digital media files have been verified to contain a digital copy of a motion picture that is identical (or, alternatively, strikingly similar or substantially similar) to Plaintiff's corresponding original copyrighted Works.

31. VXN Scan used the "Info Hash" value, contained within the metadata

1 of the .torrent file which correlated with a digital media file that was determined
2 to be identical (or substantially similar) to a copyrighted work, to download a
3 piece (or pieces) of multiple digital media files from Defendant using the
4 BitTorrent network.

5     32. VXN Scan only downloads pieces of digital media files from
6 Plaintiff's copyrighted works. At no point did VXN Scan upload content to any
7 BitTorrent user. Indeed, it is incapable of doing so.

8     33. While Defendant was using the BitTorrent file distribution network,
9 VXN Scan established multiple direct TCP/IP connections with Defendant's IP
10 address.

11     34. Plaintiff identified these pieces as portions of infringing copies of
12 Strike 3's motion pictures.

13     35. VXN Scan detected, captured and documented Defendant
14 transmitting pieces of Plaintiff's copyrighted motion pictures and recorded those
15 transactions in a Packet Capture ("PCAP") file.

16     36. Plaintiff also recorded infringement using its Cross Reference Tool.

17     37. The Cross Reference Tool is designed on the basis of a distributed
18 hash table ("DHT") and is a class of decentralized distributed systems that
19 provides an identification service similar to a hash table: (key, value) pairs are
20 stored in a DHT, and any participating node can efficiently retrieve the value
21 associated with a given key.

22     38. BitTorrent clients use a DHT to locate peers who are participating in
23 the distribution of the digital media files related to the Info Hash. Specifically, a
24 BitTorrent client locates and connects to the DHT network. That way it registers
25 its own IP address while requesting IP addresses of other peers, which are
26 distributing the same .torrent file.

27     39. Using this process BitTorrent users are able to locate and connect to a
28 number of peers within a particular swarm, and download the data related to each

.torrent file.

40. A BitTorrent client registers the IP address of the user into the DHT with the purpose of participating in the distribution of constituent pieces of the relevant digital media file.

41. The Cross Reference Tool uses servers that locate .torrent files and their related Info Hashes. The servers subsequently download the torrent information from popular torrent websites.  The Cross Reference Tool is incapable of downloading any digital media file associated with an Info Hash, and it has only the ability to download torrent file metadata.

42. Similar to BitTorrent clients, the Cross Reference Tool uses a DHT to obtain the IP Addresses of peers registered to each .torrent file listed in the DHT.

43. The Cross Reference Tool detected and documented that Defendant used the BitTorrent File Distribution Network with the purpose of distributing digital media files that have been determined to be identical (or substantially similar) to Plaintiff's copyrighted motion pictures. At no point did the Cross Reference Tool upload content to any BitTorrent user.  Indeed, it is incapable of doing so.

44. Both VXN Scan and the Cross Reference Tool independently recorded multiple infringements in the manner described above.  Collectively, Plaintiff's proprietary software detected 37 number of infringements.

45. Each work infringed by Defendant is listed on Exhibit A and sets forth the Universal Time Coordinated (UTC) time and date of each infringement, along with the Info Hash value obtained from the metadata of the corresponding .torrent file.

46. Exhibit A also sets forth relevant copyright information for each work at issue:  the date of publication, the date of registration, and the work's copyright registration number.   In a showing of good faith, Plaintiff has

7

1. intentionally omitted the title of the work from this public filing due to the adult nature of its content, but can provide a version of Exhibit A containing the works' titles to the Court or any party upon request.

47. Thus, Defendant downloaded, copied, and distributed Plaintiff's Works without authorization.

48. Defendant's infringement was continuous and ongoing.

49. Plaintiff owns the copyrights to the Works and the Works have been registered with the United States Copyright Office.

50. Plaintiff seeks statutory damages, attorneys' fees, and costs under 17 U.S.C. § 501 of the United States Copyright Act.

## COUNT I

## Direct Copyright Infringement

51. The allegations contained in paragraphs 1-50 are hereby re-alleged as if fully set forth herein.

52. Plaintiff is the owner of the Works, which is an original work of authorship.

53. Defendant copied and distributed the constituent elements of Plaintiff's Works using the BitTorrent protocol.

54. At no point in time did Plaintiff authorize, permit or consent to Defendant's distribution of its Works, expressly or otherwise.

55. As a result of the foregoing, Defendant violated Plaintiff's exclusive right to:

(A) Reproduce its Works in copies, in violation of 17 U.S.C. §§ 106(1) and 501;

(B) Distribute copies of the Works to the public by sale or other transfer of ownership, or by rental, lease or lending, in violation of 17 U.S.C. §§ 106(3) and 501;

(C) Perform the copyrighted Works, in violation of 17 U.S.C. §§ 106(4)

and 501, by showing the Works' images in any sequence and/or by making the sounds accompanying the Works' audible and transmitting said performance of the work, by means of a device or process, to members of the public capable of receiving the display (as set forth in 17 U.S.C. § 101's definitions of "perform" and "publicly" perform); and

      (D)    Display the copyrighted Works, in violation of 17 U.S.C. §§ 106(5) and 501, by showing individual images of the works non-sequentially and transmitting said display of the works by means of a device or process to members of the public capable of receiving the display (as set forth in 17 U.S.C. § 101's definition of "publicly" display).

      56.    Defendant's infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

      WHEREFORE, Plaintiff respectfully requests that the Court:

      (A)    Permanently enjoin Defendant from continuing to infringe Plaintiff's copyrighted Works;

      (B)    Order that Defendant delete and permanently remove the digital media files relating to Plaintiff's Works from each of the computers under Defendant's possession, custody or control;

      (C)    Order that Defendant delete and permanently remove the infringing copies of the Works Defendant has on computers under Defendant's possession, custody or control;

      (D)    Award Plaintiff statutory damages per infringed work pursuant to 17 U.S.C. § 504(a) and (c);

      (E)    Award Plaintiff its reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505; and

      (F)    Grant Plaintiff any other and further relief this Court deems just and proper.

DATED this 13th day of February, 2025.

**Law Offices of Lincoln Bandlow, PC**

*s/ Lincoln D. Bandlow*
Lincoln D. Bandlow
Attorney for Plaintiff
Strike3 Holdings, LLC

## DEMAND FOR A JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

DATED this 13th day of February, 2025.

**Law Offices of Lincoln Bandlow, PC**

*s/ Lincoln D. Bandlow*
Lincoln D. Bandlow
Attorney for Plaintiff
Strike3 Holdings, LLC